UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DAVID ROWAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 5:23-cv-00055-MHH |
| | ) |
| **BLUE ORIGIN ALABAMA, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

David Rowan has sued Blue Origin Alabama, LLC for discriminating against him based on his age in violation of the Age Discrimination in Employment Act. (Doc. 1). Blue Origin has filed a motion for summary judgment. (Doc. 21). This opinion addresses Blue Origin's motion. The Court begins by stating the standard that district courts must follow to resolve summary judgment motions. Consistent with that standard, the Court then describes the summary judgment evidence, presenting the evidence in the light most favorable to Mr. Rowan. Last, the Court analyzes these facts under the ADEA.

***

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a

material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences from the evidence in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "A litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of the evidence, the court cannot make credibility determinations; that is the work of a factfinder. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Still, conclusory statements in a declaration cannot by themselves create a genuine issue of material

fact. *See Stein*, 881 F.3d at 857 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

\*\*\*

Mr. Rowan has worked as a machinist and as a Computer Numerical Control programmer for more than 30 years. (Doc. 22-7, pp. 155–56). Blue Origin is an aerospace manufacturer. (*See* Doc. 22-1, p. 29, tp. 109).[1] Between 2020 and 2022, Mr. Rowan applied for 15 machine shop and CNC jobs with Blue Origin. (Doc. 22-11, p. 2).[2] Blue Origin did not select him for those positions. (Doc. 22-11, p. 2).[3] Mr. Rowan was over the age of 60 when he submitted those applications. (Doc. 22-17; Doc. 22-21; *see* Doc. 22-7, p. 8, tp. 24:15–16).

On August 11, 2022, the day that Blue Origin rejected his fourteenth application, Mr. Rowan began pursuing an age discrimination claim with the Equal Employment Opportunity Commission. (Doc. 22-11, p. 2; Doc. 22-19, p. 6).[4] Mr. Rowan accessed the EEOC's user portal, created an inquiry, and reviewed

---

[1] *See also About Blue Origin*, BLUE ORIGIN, https://www.blueorigin.com/about-blue (last visited Apr. 9, 2025).

[2] Mr. Rowan also applied for a position entitled "Enterprise Technology Business Partner." (Doc. 22-11, p. 2). Blue Origin rejected his application on April 21, 2023. (Doc. 22-11, p. 2).

[3] Fourteen rejections occurred on or before August 11, 2022. (Doc. 22-11, p. 2). The fifteenth rejection happened on November 14, 2022. (Doc. 22-11, p. 2).

[4] Mr. Rowan first contacted the EEOC without the assistance of an attorney. (Doc. 22-7, p. 76, tp. 294). Mr. Rowan does not recall when he retained counsel. (Doc. 22-7, p. 83, tp. 322).

documentation from the EEOC entitled "Preservation of Evidence." (Doc. 22-19, p. 6).[5] On August 19, 2022, the EEOC scheduled an interview with Mr. Rowan at the Birmingham District Office on September 19, 2022. (Doc. 22-19, p. 6). Five days before the interview, the EEOC sent a confirmation notice to Mr. Rowan by email. (Doc. 22-19, p. 6). Later the same morning, Mr. Rowan confirmed his appointment twice. (Doc. 22-19, pp. 5–6).[6] One day before his scheduled interview, the EEOC emailed Mr. Rowan another reminder, but the EEOC's activity log does not indicate that Mr. Rowan confirmed the interview. (Doc. 22-19, p. 5).

Mr. Rowan had a "hard time keeping up with" the EEOC process, and he spoke with an EEOC investigator named Triet Bui "here and there telephonically or on email to try to make some kind of sense out of what was going on." (Doc. 22-7, p. 77, tp. 300; *see* Doc. 22-22, p. 2). Mr. Rowan recalls the EEOC's portal "freezing

---

[5] Mr. Rowan argues that the Court cannot take judicial notice of the EEOC activity log that appears in the record at Doc. 22-19. (Doc. 26, p. 17) (citing Non-Final Report and Recommendation at 15–19, *Singh v. Infotech Prism, LLC*, (No. 1:23-cv-2250-ELR-JKL), 2023 U.S. Dist. LEXIS 227803, at *16–*19 (N.D. Ga. Dec. 21, 2023), ECF No. 21). The order in *Singh* concerns a case at the motion to dismiss stage, making *Singh* distinguishable. Additionally, Blue Origin has not asked the Court to take judicial notice of the activity log; Blue Origin has offered the EEOC's activity log as summary judgment evidence. (Doc. 29, pp. 2–3). Blue Origin has authenticated the EEOC's activity log. (Doc. 22-20). The Court may consider the EEOC activity log in resolving Blue Origin's summary judgment motion.

[6] The email address connected to the confirmation entries on the EEOC activity log, (Doc. 22-19, pp. 5–6), matches the email address that Mr. Rowan provided in his deposition, (Doc. 22-7, pp. 9–10, tpp. 29–30).

Mr. Rowan accesses his email primarily on his cell phone, and he has downloaded documents onto his cell phone. (Doc. 22-7, pp. 77, 85, tpp. 301, 333).

up and coming to a grinding halt." (Doc. 22-7, p. 76, tp. 295). He contacted political representatives for help with the portal. (Doc. 22-7, p. 76, tpp. 295, 296–97).[7] With the help of his representatives, Mr. Rowan "unclogged" the system, because "the next thing [he] kn[e]w, both Birmingham and Atlanta EEOC officers [and] agents, [] were contacting [him] telephonically or by email" to address his claims. (Doc. 22-7, p. 76, tp. 296).

An EEOC investigator prepared a draft charge of discrimination for Mr. Rowan, uploaded the draft to Mr. Rowan's portal, and sent the draft to Mr. Rowan for review. (Doc. 22-19, p. 5).[8] Three days later, on September 23, 2022, Mr. Rowan finalized his charge. (Doc. 22-7, p. 81, tpp. 315–16; Doc. 22-9, p. 14; Doc. 22-19, p. 4). The same day, the EEOC emailed Mr. Rowan confirmation that his charge was filed. (Doc. 22-19, p. 4).

In his charge, Mr. Rowan alleged that he applied 14 times for positions at Blue Origin and that the company did not hire him for these positions because of to his age. (Doc. 22-9, p. 14). Mr. Rowan described some of his interactions with Blue Origin during the job application process. (Doc. 22-9, p. 14).

---

[7] Mr. Rowan testified that he contacted Senator Raphael Warnock about the EEOC user portal before he filed his September 2022 EEOC Charge of Discrimination. (Doc. 22-7, p. 81, tpp. 316–17).

[8] The EEOC log does not indicate how the EEOC investigator, Iran Cruz, "sent" the draft charge of discrimination to Mr. Rowan. (Doc. 22-19, p. 5). The log reflects that when an EEOC employee communicated with Mr. Rowan by email, the "event" explicitly references email correspondence. (Doc. 22-19, pp. 2, 5-6).

On September 28, 2022, the EEOC issued Mr. Rowan a "Determination and Notice of Rights." (Doc. 22-9, p. 15). The mailing address on the notice matches the address that Mr. Rowan included on the resume that he provided to Blue Origin. (Doc. 22-7, p. 12, tp. 41; Doc. 22-7, p. 155; Doc. 22-9, p. 15). The notice indicated that the EEOC would not proceed with its investigation into Mr. Rowan's claims. (Doc. 22-9, p. 15). In the notice, the EEOC stated:

> This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against [Blue Origin] on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.

(Doc. 22-9, p. 15) (caps and bold in notice). On the day that the EEOC issued the right-to-sue letter to Mr. Rowan, the EEOC uploaded his to his portal a document entitled "Closure Notice/NRTS & FileName:420-09-28 David Rowan form 161.pdf.," and the EEOC sent Mr. Rowan an email indicating "that a new document [wa]s available to download." (Doc. 22-19, p. 3).[9] Mr. Rowan does not recall whether he received the right-to-sue letter. (Doc. 22-7, pp. 82–83, tpp. 319–22).

According to the EEOC's records, a "Publicportal user" labeled as "The Charging Party" downloaded Mr. Rowan's charge on October 5, 2022. (Doc. 22-

---

[9] The text of this email does not appear in the record; the record contains only the EEOC's description of the email.

19, p. 2). On October 6, 2022, the EEOC sent a reminder email to Mr. Rowan indicating that his "Closure Notice/NTRS document [wa]s available to download." (Doc. 22-19, p. 2).[10] On October 18, 2022, an individual listed in the EEOC's records as "LAKESIA JACKSON" downloaded Mr. Rowan's right-to-sue letter. (Doc. 22-19, p. 2).[11] Citing the same page of the EEOC activity log, Mr. Rowan asserts that he did not view the right-to-sue letter until October 18. (Doc. 26, p. 17). The activity log does not indicate that Mr. Rowan downloaded the letter on October 18, and he has not explained his relationship to Lakesia Jackson. During his deposition, Mr. Rowan testified as follows:

> Q. Did you receive emails from the EEOC, letting you know that documents were available for download?
>
> A. I think they made me aware, but I had almost zero success accessing any of that, okay.
>
> Q. If the EEOC portal log shows that on October 5, 2022, you downloaded a document from the website, do you have any reason to dispute that?
>
> A. I probably was trying to. I don't know which document you're talking about. . . .
>
> Q. When you access the EEOC portal, did you look at all documents that were on the portal?

---

[10] The text of this email does not appear in the record; the record contains only the EEOC's description of the email.

[11] Blue Origin downloaded the right-to-sue letter on September 28, 2022 and again on October 18, 2022. (Doc. 22-19, p. 2).

> A. I doubt it. It looks like there's a lot there going on. I don't think I went through the entire portal to find out everything that was on there.

(Doc. 22-7, p. 83, tpp. 323–25).

On November 10, 2022, Mr. Rowan filed a second charge with the EEOC. (Doc. 22-22, p. 1; Doc. 22-9, p. 16). Mr. Rowan filed the second charge "after somebody from the EEOC thought that there was information relevant to [his case] that had come up." (Doc. 22-7, p. 84, tp. 326). Mr. Rowan's second charge references the 14 alleged acts of discrimination mentioned in his first charge. (Doc. 22-9, p. 16). Mr. Rowan added that "[o]n or about October 11, 2022, [he] learned that Christian Bureriu, former Human Resources for [Blue Origin,] was told 'not to hire anyone over the age of 30.'" (Doc. 22-9, p. 16). Mr. Rowan described his interactions with Blue Origin much as he did in his first charge. (Doc. 22-9, pp. 14, 16). An EEOC investigator contacted Mr. Rowan by email after he missed an interview concerning his second charge. (Doc. 22-9, p. 13). When counsel for Blue Origin asked Mr. Rowan if he remembered receiving the investigator's email, Mr. Rowan responded that "[i]t doesn't come to the front of [his] mind, but in digesting its significance, [he] must have." (Doc. 22-7, p 77, tp. 300).

Mr. Rowan filed this lawsuit on January 13, 2023. (Doc. 1). In March of 2023, the EEOC sent Mr. Rowan a letter informing him that the EEOC had "administratively closed" his second charge "as a duplicate" and consolidated the documentation under his first charge. (Doc. 22-22, p. 2).

8

\*\*\*

The ADEA provides that employers shall not "fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To bring a lawsuit under the ADEA, a plaintiff must first file a charge of discrimination with the EEOC. § 626(d)(1).[12] A plaintiff must file a charge "within 180 days after the alleged unlawful practice occurred." § 626(d)(1)(A).[13] When the EEOC dismisses or terminates a claim, the EEOC "shall notify the person aggrieved." § 626(e). A plaintiff must bring their lawsuit "within 90 days after the date of the receipt of such notice." § 626(e).

"Once a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (per curiam) (citing *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002)). District

---

[12] As discussed, Mr. Rowan's charges concern 14 acts of discrimination. (Doc. 22-9, pp. 14, 16). The charges do not concern Blue Origin's hiring decisions on November 14, 2022 and April 21, 2023. (*See* Doc. 22-9, pp. 14, 16; Doc. 22-11, p. 2). Because Mr. Rowan has not filed an EEOC charge regarding these two decisions, he has not exhausted his administrative remedies for those decisions and cannot maintain a claim for discrimination based on actions taken on those dates.

[13] Mr. Rowan filed his first charge on September 23, 2022. (Doc. 22-9, p. 14; Doc. 22-19, p. 4). Of the 14 alleged acts of discrimination Mr. Rowan mentioned in his charge, (Doc. 22-9, p. 14), only three occurred within 180 days of September 23, 2022. (*See* Doc. 22-11, p. 2). Mr. Rowan did not timely file a charge concerning his unsuccessful job applications between August 24, 2020 and March 8, 2022. (*See* Doc. 22-11, p. 2).

9

courts consider the timeliness of a plaintiff's judicial complaint on a case-by-case basis "to fashion a fair and reasonable rule for the circumstances of each case." *Kerr*, 427 F.3d at 952 (quoting *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1340 (11th Cir. 1999)). The Eleventh Circuit has "expressed concern over enabling complainants to enjoy a 'manipulable open-ended time extension which could render the statutory minimum meaningless.'" *Kerr*, 427 F.3d at 952 (quoting *Zillyette*, 179 F.3d at 1340). Plaintiffs must "assume some minimum responsibility in resolving their claims," but districts courts cannot "'condition[] a claimant's right to sue . . . on fortuitous circumstances or events beyond his control which are not spelled out in the statute.'" *Zillyette*, 179 F.3d at 1340 (quoting *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974), *rev'd on other grounds*, 424 U.S. 747 (1976)).

The 90-day period for filing a complaint of discrimination against an employer begins when an employee "'has adequate notice that the EEOC has dismissed" his EEOC charge.'" *Kerr*, 427 F.3d at 951 (quoting *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000)). The Eleventh Circuit has "said generally that 'statutory notification is complete only upon actual receipt of the right to sue letter.'" *Kerr*, 427 F.3d at 952 (quoting *Franks*, 495 F.2d at 404). Still, the "date of actual receipt is material to the summary judgment analysis only if there was no adequate notice prior to actual receipt." *Kerr*, 427 F.3d at 952.

In *Kerr*, the Eleventh Circuit considered whether "a complainant's actual knowledge that investigation of her claim ha[d] been terminated [sufficed] to cause the time for filing to begin running within a reasonable time after notice of the complainant's requested right-to-sue notice ha[d] been mailed." 427 F.3d at 948. In April of 2002, the plaintiffs in *Kerr* filed with the EEOC a charge against their former employer for age discrimination. *Kerr*, 427 F.3d at 949. That December, the EEOC investigator spoke with the plaintiffs by telephone and informed them that the EEOC had concluded its investigation. *Kerr*, 427 F.3d at 949. One plaintiff admitted that she had knowledge that the EEOC "had ended its investigation and processing of her charge" by early January 2003. *Kerr*, 427 F.3d at 949.

In late December, the plaintiffs requested right-to-sue letters by telephone. *Kerr*, 427 F.3d at 949. The EEOC mailed written confirmation forms to the plaintiffs which the plaintiffs signed and returned to the EEOC. *Kerr*, 427 F.3d at 949. The EEOC received the plaintiffs' written confirmations on January 7, 2003. *Kerr*, 427 F.3d at 949. The plaintiffs testified that they did not receive right-to-sue letters until February of 2003. *Kerr*, 427 F.3d at 949. The plaintiffs did not inquire into the status of their letters between sending the confirmations and receiving the letters. *Kerr*, 427 F.3d at 949–50. The EEOC dated the right-to-sue letters for December 31, 2002. *Kerr*, 427 F.3d at 950. Despite receiving the letters in February of 2003, the plaintiffs did not inquire about the discrepancy between the date on the letter and

11

the date of receipt. *Kerr*, 427 F.3d at 950. The plaintiffs filed their lawsuit on May 15, 2003. *Kerr*, 427 F.3d at 949.

The Eleventh Circuit affirmed the district court's grant of summary judgment to the employer and concluded that the plaintiffs had adequate notice before receiving their right-to-sue letters, which made their lawsuit untimely. *Kerr*, 427 F.3d at 954. The Eleventh Circuit noted that starting the 90-day clock upon the plaintiffs' mid-February receipt of the letters could allow the plaintiffs to benefit from a "'manipulable open-ended time extension.'" *Kerr*, 427 F.3d at 953 (quoting *Franks*, 495 F.2d at 404; *Zillyette*, 179 F.3d at 1340). The Eleventh Circuit faulted the plaintiffs for not checking on the status of their right-to-sue letters after requesting the letters, for not clarifying the December 31, 2002 date on letters received in February of 2003, and for not contacting the EEOC when the "photocopied hole punch marks at the top of the letters clearly indicated that they were file copies, not the original copies mailed." *Kerr*, 427 F.3d at 953. The Eleventh Circuit added that the plaintiffs still had "nearly two months" to file their lawsuit after receiving the letters in mid-February, and by waiting until May 15 to file their judicial complaint, the plaintiffs "forced" the timeliness issue "unnecessarily." *Kerr*, 427 F.3d at 947. Because the EEOC received the plaintiffs' written confirmations on January 7, the EEOC would not have mailed the right-to-sue letters later than January 9. *Kerr*, 427 F.3d at 949, 950. Applying a three-day

grace period for delivery of mail, the Eleventh Circuit held that the plaintiffs' 90-day clock started running on January 12, 2003. *Kerr*, 427 F.3d at 953.

Blue Origin argues that the EEOC's September 28, 2022 email to Mr. Rowan provided adequate notice sufficient to start the 90-day clock. (Doc. 23, pp. 13–16; Doc. 29, pp. 2–5).[14] If Mr. Rowan received notice on September 28, then his 90-day deadline passed on December 27, 2022 and he did not timely file his lawsuit.

On September 28, the EEOC issued Mr. Rowan's right-to-sue letter, uploaded the letter to Mr. Rowan's portal under the name "Closure Notice/NRTS & FileName:420-09-28 David Rowan form 161.pdf," and emailed Mr. Rowan to inform him "that a new document [wa]s available to download." (Doc. 22-19, p. 3). Mr. Rowan testified that he thought the EEOC made him aware by email of documents available for download, but he had "almost zero success" accessing documents available for download in the EEOC electronic log. (Doc. 22-7, p. 83, tp. 323).[15] Mr. Rowan testified that, generally, he received emails on his cell phone

---

[14] The Court has not found an Eleventh Circuit decision applying *Kerr* and the other decisions cited above in the context of electronic notice. At least three other appellate courts have held that email notice can start the 90-day clock. *Kinder v. Marion Cnty. Prosecutor's Off.*, No. 24-1952, 2025 WL 914342, at *2–*3 (7th Cir. Mar. 26, 2025) (published citation not yet available); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1070–71 (8th Cir. 2024); *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221–24 (3d Cir. 2024). District courts in this circuit have also addressed the issue. *See, e.g.*, *Goodwin v. Strickland Paper Co.*, No. 2:22-cv-01486-AMM, 2025 WL 756022 (N.D. Ala. Mar. 10, 2025) (concluding email may suffice to provide adequate notice).

[15] Mr. Rowan's testimony about problems with the EEOC pertained to the EEOC's portal, not to the EEOC's emails to him. (Doc. 22-7, pp. 76, 83, tpp. 295, 296–97, 298, 323).

and that he had downloaded documents onto his cell phone. (Doc. 22-7, pp. 77, 85, tp. 301, 333). The EEOC log regarding Mr. Rowan's first charge indicates, for example, that he received an email from the EEOC attaching a confirmation notice regarding an interview because approximately 3.5 hours after the EEOC emailed the notice to Mr. Rowan, he confirmed the interview. (Doc. 22-19, pp. 5-6). On another occasion when an EEOC investigator emailed Mr. Rowan, Mr. Rowan testified that he "must have" received the email given the email's "significance." (Doc. 22-7, p. 77, tp. 300).[16]

Viewing this evidence in the light most favorable to Mr. Rowan, Blue Origin can demonstrate from the EEOC activity log that Mr. Rowan received an email from the EEOC on or close to September 28, 2022, but the log indicates only that the email informed Mr. Rowan "that a new document [wa]s available to download." (Doc. 22-19, p. 3). Therefore, the September 28 email alone did not provide Mr. Rowan with adequate notice that the EEOC had declined to pursue his charge administratively and that he must file a lawsuit within 90-days if he wished to pursue a claim against Blue Origin.

---

[16] Mr. Rowan also testified that he thought the EEOC made him aware by email that "documents were available for download." (Doc. 22-7, p. 83, tp. 323). Though he asserted that he had little success accessing these documents, (Doc. 22-7, p. 83, tp. 323), Mr. Rowan's testimony supports an inference that he had notice that the EEOC provided documents to him shortly after the EEOC filed his charge.

On October 5, one week after receiving the email notice "that a new document [wa]s available to download," (Doc. 22-19, p. 3), Mr. Rowan accessed the EEOC activity log from a public portal and downloaded a copy of his charge, (Doc. 22-19, p. 2). Mr. Rowan does not dispute that he downloaded a document on October 5. (Doc. 22-7, p. 83, tpp. 323–24). Still, Mr. Rowan doubted that he looked at all documents available on his portal. (Doc. 22-7, p. 83, tp. 325). The following day, October 6, the EEOC sent Mr. Rowan an email reminding him that his "Closure Notice/NTRS document [wa]s available to download." (Doc. 22-19, p. 2). (Doc. 22-19, p. 2). As with the September 28 email, Mr. Rowan has not testified that he did not receive the October 6 email, and he has not rebutted Blue Origin's contention that he received email notification from the EEOC on October 6. Unlike the September 28 activity log notation, the October 6 activity log notation states that the email informed Mr. Rowan specifically that his "Closure Notice/NTRS document [wa]s available to download." (Doc. 22-19, p. 2).[17]

As in *Kerr*, the record does not suggest that Mr. Rowan asked Mr. Bui or another EEOC representative about the status of his charge or the document referenced in the EEOC's September 28 and October 6 emails, even though he communicated with Mr. Bui "here and there." *See Kerr*, 427 F.3d at 953; (Doc. 22-7, p. 77, tp. 300). Even if Mr. Rowan viewed his right-to-sue letter for the first time

---

[17] Mr. Rowan has not rebutted the activity log's description of the email's contents.

on October 18, the EEOC's October 6 email message communicated to Mr. Rowan that the EEOC had concluded its investigation into his claims regarding his 14 job applications with Blue Origin. *See Kerr*, 427 F.3d at 949, 954. The record reflects that Mr. Rowan responded within four hours to an email message concerning an EEOC interview when he was trying to initiate his charge, but he waited weeks to investigate an email notification concerning the "Closure Notice." Because Mr. Rowan did not "'assume some minimum responsibility in resolving [his] claims,'" *Zillyette*, 179 F.3d at 1340 (quoting *Franks*, 495 F.2d at 404), after he receiving the October 6 email message concerning the closure notice, he has not rebutted Blue Origin's contention that he waited too long to file his complaint in this action.

Mr. Rowan asserts that he did not view the right-to-sue letter until October 18. (Doc. 26, p. 17) (citing Doc. 22-19, p. 2).[18] Assuming *arguendo* that Mr. Rowan viewed his right-to-sue letter for the first time on October 18, the letter states that the EEOC issued the letter on September 28, 2022 and emphasizes that a lawsuit must be filed "**WITHIN 90 DAYS**" of receipt of the letter. (*See* Doc. 22-9, p. 15). As of October 18, from the EEOC's September 28, 2022 email notice to Mr. Rowan that a "new document" was available for him to download, more than two months remained for him to sue Blue Origin. *See Kerr*, 427 F.3d at 953. By waiting until

---

[18] If Mr. Rowan received notice of his right to sue on October 18, then his 90-day deadline passed on January 16, 2023, and he filed his January 13, 2023 complaint in this action within the 90-day window.

16

January 13, 2023 to file his judicial complaint, Mr. Rowan "forced" the timeliness issue in this case "unnecessarily." *See Kerr*, 427 F.3d at 947. In any event, Mr. Rowan had adequate notice that the EEOC closed his administrative proceeding on October 6, causing the 90-day window for filing a complaint in federal court to close on January 4, 2023.

Mr. Rowan contends that the charge that he filed with the EEOC on November 10, 2022, tolled the 90-day deadline. (Doc. 26, p. 18).[19] The EEOC determined that the November 2022 charge was a duplicate of his September 2022 charge and consolidated the second charge with the first. (Doc. 22-22, p. 2). EEOC regulations provide that the EEOC may "on its own initiative reconsider its decision." 29 C.F.R. § 1601.21(b). When the EEOC elects to reconsider a decision, it must "promptly issue" a notice of intent to reconsider. § 1601.21(b)(1). If the EEOC issues a reconsideration notice within 90 days of the claimant's receipt of a right-to-sue letter, then the notice vacates the right-to-sue letter. § 1601.21(b)(1). Though Mr. Rowan testified that he filed his second charge "after somebody from the EEOC thought that there was information relevant to [his case] that had come up," (Doc. 22-7, p. 84, tp. 326), Mr. Rowan has not supplied a notice of intent to reconsider from the EEOC. Because Mr. Rowan has produced only one right-to-sue letter from the EEOC, in the absence of a notice of reconsideration, Mr. Rowan has not carried

---

[19] Mr. Rowan has not cited legal authority to support this contention. (Doc. 26, p. 18).

17

his burden of showing that he filed his federal court complaint on time. *Kerr*, 427 F.3d at 951.[20]

## IV.

Accordingly, the Court grants Blue Origin's motion for summary judgment. By separate order, the Court will enter a final judgment in favor of Blue Origin on Mr. Rowan's age discrimination claims.

**DONE** and **ORDERED** this March 4, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[20] The "timely-filing requirements of" employment discrimination statutes "are non-jurisdictional and subject to equitable tolling." *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) (citations omitted). Plaintiffs bear "the burden of proving that equitable tolling of the limitations period is appropriate." *Stamper*, 863 F.3d at 1342 (citation omitted). Mr. Rowan did not raise equitable tolling in his response to Blue Origin's motion.

Because Mr. Rowan did not timely file his lawsuit, the Court does not reach the parties' arguments on the merits of his claims.